Gheejt, J.
This bill is brought to enforce a re-conveyance of certain tracts of land, which were sold as the property of Samuel Wright, under a deed of trust, which land was purchased by the defendants, and is sought to be redeemed by the complainants, who (laim the right to " do so, because they say they are bona fuls creditors of said Wright, and have tendered to the defendants the amount" of money, which by law, they arc entitled to receive. The right of the complainants to redeem is resisted upon several grounds. The first ground we shall notice, upon which the defendants resist the bill, is, that the complainants agreed they would not redeem, and thereby induced the defendants to make the purchase, and to expend large sums of money in constructing improvements on the laud. The lands were sold b}' virtue of deeds of trust, which were made to secure debts, to a large amount, due the complainants. They expected to experience a loss of part of their debt, and were anxious that the property should bring the highest possible price. They did not wish to become purchasers of the land, and would have preferred losing a considerable amount of the debt, rather than to bid *134 it ¡n. On the day of the sale, their agents, Mr. Ewing, tile . . ,, , ,. , - . i • ¶ and Mr. Bradford urged the delendanrs to bid. They were told, that if they would bid §7000 for the land, tjaer0 wag ^ut ]¡tti0 doubt, but that the complainants would wait one, two or three years for the money; and Mr. Bradford says, that his impression at the time of the sale was, that the complainants would not redeem the property, and he has no doubt he expressed that opinion to the defendants in strong terms; that his impression is, the complainants autho-rised him to say to the defendants that they would notredeem, and that he did say so; as to that, he will not be positive, but that when he heard the property would be redeemed, he was very' much surprised. Mr. Erwin states, that he had heard Mr. Robert Woods say, that he was willing to make a sacrifice rather than to be troubled with the property, and that Mr. Woods had told him, that he (Woods) had, in a conversation with one of the defendants, told him he would not redeem the land, or did not expect to redeem it. After-wards he said to witness, that this remark was a voluntary one, and formed no part of the consideration in the purchase, or that it was after the purchase was made. Mr. Ewing, the trustee, states, that when the deed was about to be executed by him to the defendants, Mr. Robert Woods and the defendants talked a great deal about the probability of a redemption, and that Mr. Woods stated, that Ogden Ferguson & Co. were the only creditors that had a debt that would justify a redemption. When asked to release his claim on Wright to the defendants, he stated, as one reason why he would not do so, that he hoped to get a negro (belonging to Wright) that had runaway, and no other reason is recollected to have been given. It is admitted by complainants, that defendants have made considerable improvements on the land since they purchased it, and before they knew complainants entertained any purpose of redeeming it. This evidence, we think, proves beyond a doubt, that one of the complainants gave assurances to the defendants that no redemption would be made of the land in controversy, and that acting upon this promise, large expenditures have been made in improvements on the land. It is true no positive promise not to redeem is *135 expressly proven by any witness, except Mr. Erwin. But bis statement is clear and unequivocal, and proves the knowledgcment of Mr. Woods, that lie had said to one of the defendants, that he would not redeem. He afterwards told Mr. Envin, that the promise formed no consideration for the purchase, or was after the sale. But whether it was made before or after -the sale is not material, if the defend-dants acting upon the faith of it afterwards expended their money in making improvements. There 'is strong reason to believe, however, that a like promise was made before the sale. Mr. Bradford’s impression is, that he told the defendants before the sale, that Mr. Woods authorised him to say to them, that if they would bid $7000 for the land he would not redeem it. The subject of the redemption was a matter of solicitude with the defendants, and they had a great deal of talk about it with Mr. Woods, at the time they received the deed for the land. Mr. Woods at that time mentioned Ogden Ferguson & Co., as the only persons who were likely to redeem. It is clear that the defendants must have had the most satisfactory understanding that he would not redeem, or their solicitude would not have had such entire reference to the probable conduct of others. When we add to this the admitted fact, that he did make such promise after the sale, the conclusion is satisfactory, that a like promise was made before the sale, through Mr. Bradford, his agent. We have then the case of a purchase made at the solicitation of the complainants, under a promise not to redeem the land, and that promise repeated after the purchase, inducing the expenditure of considerable sums in improvements, and after all this an attempt to enforce a re-conveyance, under the statute by a tender of the purchase money and ten per cent, interest. Can such an attempt find countenance in this court? We answer unhesitatingly, it cannot. There is now, to be sure, an offer to pay any sums which may have been expended in improvements, but if they were guilty of no fault there is no ground upon which this court could require them to do so; and if guilty of such wrong, as to justify the imposition of such a condition, this court will not assist them to reap the benefit of a judicious 'improvement, enhancing *136 l^e va'l,e °f ^le property greatly beyond its cost, on pay* of the money expended. If this were done, tbe creditors of a debtor, whose land might be sold, would be encouraged to stand by, promising not to redeem, and stimulating the purchaser to make improvements, and tV.cn, if they succeeded in greatly enhancing tbe value of the property, they would come in and by redeeming, obtain a premium for their breach of faith. This is what no man, unbiassed by the force of bis own interest would ask, and what no court of chancery ought to permit. But it is said, this promise is not obligatory, because it was 'not made in writing, and to enforce it would be against the statute of frauds. In answer to this, it may be sufficient to say, that the promise contains no relinquishment of any interest in land. The complainants bad no interest in this land after tbe sale. They were in tbe situation of every other creditor of Wright, having by the statute tbe legal right to redeem the land upon tbe performance of certain conditions, but certainly having no interest in tbe land until the conditions were performed. The entire and absolute estate was vested in the purchaser, subject to be divested upon tbe terms prescribed in tbe statute, which gives any creditor a right to purchase tbe laud, by tbe payment of the money bid at the sale and ten per cent, thereon.
The case of Fay vs. Valentine, 12 Pick. Rep. 43, fully sustains the defence in this case. That was the case of a purchase of a mortgage. There tbe party entitled to the equity of redemption, urged the defendants to purchase tbe mortgage, assuring him that it should never be redeemed. The purchase was made, and buildings erected upon the land at great cost and expense, before the plaintiff gave notice of his intention to redeem. It was objected, that tbe mortgagee could not relinquish bis interest by parol. Tbe court say, “most certainly he cannot, but no party, whatever may be bis interests or legal rights, can have relief in a court of equity, unless his claim is founded upon the basis of good faith and justices It is a familiar rule, that he who seeks equity must do equity. He must not expect the aid of a court of equity, to sanction the violation of his engagements, although “there may be no legal means to enforce them.” *137 This case is directly in point, if authority were needed to J . . settle a question so plain in principle. It is objected that is against public policy to recognize and .enforce a contract of this kind. There is a great difference between this case and the agreement of several, that they will not bid against each other at a public sale; such agreement would tend to depress the price of the property to be sold, and would injure the owner. But the natural tendency of this agreement was to enhance the price of the land. Who does not perceive that the right of the owner or his creditors to redeem land sold •under execution, depresses the price below what the purchaser w'ould be willing to give, if he knew he would get an indefeasible title? An assurance, therefore, that no redemption would take place, would naturally have the effect of increasing, rather than depressing the price. The foregoing view is sufficient to determine this case, but as the question whether the creditor, who shall bo permitted to redeem shall not be a judgment creditor, is one in which the country is greatly interested, we think proper to consider that also.
Continuation of the opinion by
Reese, J.
To constitute a person a bona fide creditor, within the meaning of the act of 1820, c 11, § 3, 4, 5, so as to au-thorise him to redeem from the purchaser of land, sold at execution sale, is it necessary that he should have obtained a judgment against the execution debtor, the original owner of the land? An attentive perusal of the - case of Hawkins vs. Jamison, will leave no doubt that so early a.s the time, when that case was before the court, this question, if it had arisen, would have been determined in the affirmative. The court repeatedly, and with apparent anxiety to fix in the professional and public mind tbe impression, state, that the debt “must be legally ascertained.” Such too, we imagine, has been the current of professional thinking, as is rendered manifest by the fact, that for seventeen years, since the enactment of the statute, none other than judgment creditors, prior to this case, Lave sought in our courts of justice to assert their claim to redeem. These, however, are but pursuasive eonsidera- *138 tions. It is readily conceded that the terms ubGim fide creditor” do not necessarily and by their proper force mean judgment creditor. The terms are not usual in our statutes, and. they recur with remarkable frequency in tho three sections of the statute referred to, being repealed so often as nine times. We have no doubt, but that they were used restrictively, and not with a view to amplify and extend either creditors or their claims. It is no doubt true, as urged for the complainants, that the main object of the statute was to protect the rights and interests of the debtor; to secure to him if practicable, the redemption ol his land; and if that were out of his power, the extinction, within the term of two years, of as large an amount as possible of bova fide debts. It was one of a series of measures called relief measures, adopted at the same session, and vindicated at the time by the pecu-cuniary pressure and indebtedness of the period. To require a judgment, to resist a redemption by the debtor, or to autho-rise a redemption by one creditor from another, or from the purchaser, is perfectly consistent with the object of the act, while to dispense with a judgment, would tend to defeat the object of the statute, in embarrassing redemption by tbo debtor or other creditors. The debts were to be ben a fide, that is subsisting, not barred by the statute of limitations, not paid, not released, without just sett oil, untainted by fraud or illegality, honestly and equitably due, ex cquo et bo-no. All this is involved in the terms bona fide, and how shall all this, so anxiously and rcpenicdly demanded by the statute be known and “legally ascertained,” except by the prosecution of tbo claim to judgment? Again, before this statute, as well as since, real estate has by our system been guarded and protected for the owner with much solicitude. To subject it to sale, there must not only bo a judgment and execution, but the personal property must he exhausted or not to bo found, the land must bo advertised and publicly sold at tho court house. The title to land thus c;.i:iicu,-3y guarded in the hands of the original owner, the execution debtor, the moment a sale takes place becomes, according to tho argument, for two years a sort of apple of discord, between the purchaser, the debtor, and bis creditors, tossed to and fro *139 among them, now hero, now there, without a judgment ob-f ’ 5 ’ ° taii'.ed, or other solemn act done. But to recur to the ...... . , It sets out tvitli a judgment, an execution, and a sale; these i i •'i . . . . , r , , solemn record evidences, and ministerial acts founded upon them, constitute the termini aquo oí all that follows. The second section supposes there has been a sale, and that the debtor wishes to redeem; he may do so, says that section, at any tinto within two years, upon payment, or tender of the principal money bid at the sale, with ten per cent, thereon. Go much for the act. But the casp of Hawkins vs. Jamison decides, that he shall not redeem,- if the purchaser ho a judgment creditor, or the assignee of a judg-incut creditor, and wishes to retain, &c. This is by judicial construction, it is not in the act. But if you carry that decision further, and say that the purchaser may resist the redemption of the debtor, by setting up bonds, notes ami accounts, which ho has from all sides purchased, borrowed, or in some manner gathered in, malting a mass of claims doubtful, difficult and complicated, is it not obvious that the main purpose of the statute would be effectually thwarted? The third section provides, that when an interest in land shall be sold at execution sale, and the owner thereof shall have other bona fule creditors, whose debts are not secured or paid, such bona fide creditor shall redeem, &c. “And he shall further offer and agree to credit the person whoso estate was sold,” &c. Where shall the evidence of this further credit be put? upon the note’ or account, in the possession of the redeeming creditor? What would that avail the debtor? Again, upon this being done, “it shall be the-duty of the purchaser, or person claiming under him, to convey to said bona fule creditor said interest.” How convey? What shall the deed recite? “Whereas, A B produced to me an account against G I), and also produced before me witnesses,” or “a note of hand,” or “a covenant to deliver horses” or “cotton,” or “pork.” Would not this be absurd? But the purchaser or person claiming under him, may resist and defeat the redemption, if he will pay or secure to be paid in six months thereafter, to such bona fide creditor, the sum proposed to he advanced by him. Who could or *140 would venture to pay, or to secure the debt of another which had not been subjected to legal investigation and ascertainment? For it will be remarked, that this whole section contemplates interviews and negotiations touching the debts of a third person not present, or a party to these interviews and negotiations, and bow, under such circumstances, would they without record evidence move in safety one single step?
The two following sections are subject to the same remarks, and furnish the same illustrations. This construction does no violence to the words of the statute, nor involves any departure from their meaning. The requirement is, that the creditor, or rather his debt, shall be bona fide. How shall this quality or character of the debt, so frequently and anxiously demanded by the statute, be ascertained? The act indeed does not in terms prescribe, but its scope and object, as well' as the necessity of the case, and the reason and nature of things require that it should have been ascertained previously to redemption, by legal investigation, by a judgment. Under' the act of 1801, c 25. where a creditor seeks to set aside a fraudulent conveyance, in a court of chancery, he is uniformly required to have previously obtained a judgment at law; so also, when a creditor seeks in a court cf chancery to subject the equitable estate of his debtor, his character of creditor must have been ascertained in a court of law. CaD it then be supposed, that this tribunal in ¡mis, constituted by the act, and consisting of creditor, purchaser and debtor, shall have evidence of indebtedness less solemn, by which to operate upon the title to real estate? Surely not. Upon this ground, therefore, as well as upon that first mentioned, we think the bill of complainants must be dismissed.
Decree affirmed.
TuRLev, J., concurred.